```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                        NORTHERN DIVISION


   UNITED STATES OF AMERICA                        PLAINTIFF

   V.                              CRIMINAL ACTION NO: 3:16cr74

   QUINCY KING                                      DEFENDANT




               TRANSCRIPT OF PRETRIAL CONFERENCE

                   TUESDAY, APRIL 24, 2018

          BEFORE THE HONORABLE WILLIAM H. BARBOUR, JR.
                 UNITED STATES DISTRICT JUDGE
```

COURT REPORTER:


FRED W. JESKE, RMR, CRR
701 NORTH MAIN STREET, SUITE 228
HATTIESBURG, MISSISSIPPI  39401
(601) 255-6432
fred_jeske@mssd.uscourts.gov

1    APPEARANCES:

2    REPRESENTING THE PLAINTIFF:

3        CHRISTOPHER L. WANSLEY, ESQUIRE
         OFFICE OF THE UNITED STATES ATTORNEY
4        501 EAST COURT STREET, SUITE 4.430
         JACKSON, MISSISSIPPI  39201
5        (601) 965-4480
         christopher.wansley@usdoj.gov

6

7

8    REPRESENTING THE DEFENDANT:

9        QUINCY KING, PRO SE

10       MADISON COUNTY JAIL.

11       2935 HIGHWAY 51

12       CANTON, MS  39046

13

14                            -oOo-

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURT:  Mr. King, would you come stand at this |
| 3 | lectern, please. |
| 4 | You are Quincy King? |
| 5 | THE DEFENDANT:  Yes, sir. |
| 6 | THE COURT:  I'm Judge Barbour. |
| 7 | THE DEFENDANT:  How you doing, Your Honor? |
| 8 | THE COURT:  This gentleman over here is Abe McGlothin. |
| 9 | He is an AUSA, Assistant United States Attorney, who is now |
| 10 | handling your case. |
| 11 | THE CLERK:  Judge Barbour, it's Chris Wansley. |
| 12 | THE COURT:  Chris Wansley.  Okay.  I've got the |
| 13 | wrong -- in the wrong chair. |
| 14 | Okay.  I'm sorry, y'all. |
| 15 | MR. WANSLEY:  That's fine. |
| 16 | THE COURT:  Mr. Wansley is the Assistant United States |
| 17 | Attorney assigned to your case. |
| 18 | You are getting ready to come up for trial.  I'm going to |
| 19 | set your case for trial. |
| 20 | Now I understand that you have asked for an attorney to |
| 21 | represent you, and that Mr. Larry Yarbrough was assigned to |
| 22 | represent you from the pool of attorneys that -- well, |
| 23 | Mr. Richard Rehfeldt was assigned first, and you said you |
| 24 | didn't want him on January 24th of this year; that Mr. Larry |
| 25 | Yarbrough was assigned to represent you, and he -- you |

1  terminated him on April the 16th, 2018.

2      You have a right to have somebody represent you, but just

3  because you don't like the attorney that's selected -- you can

4  select an attorney and pay him or we will pick one for you, and

5  you can have him.  Or the other option that you have is you can

6  represent yourself and be your own lawyer.  If that happens,

7  then we will probably appoint you a lawyer that we call a

8  standby lawyer so that you can represent yourself but he can

9  make recommendations to you that you do not have to listen to

10 or follow.  But that will help the system know that you have

11 been offered a lawyer.

12     Now your time of choosing a lawyer and getting rid of a

13 lawyer is over.  What date do we have for trial?

14     Mr. McGlothin, could you step up here and look at the

15 calendar with Nijah, please, and see what would be convenient

16 for you and for me?  Because we can have Mr. King available.

17         MR. WANSLEY:  Yes, Your Honor.

18         THE COURT:  Mr. King, since you do not have an

19 attorney to represent you right now, I can't confer with your

20 attorney.

21     Do you have any prospect or any intention of getting your

22 own attorney?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  All right.  I'm going to set your case for

25 June the 25th here in this courtroom, and the marshal will

1    bring you back in here then.

2        Between now and then you have the option of -- I can ask

3    Mr. Joiner, who is the head of the, of the attorneys who are

4    appointment attorneys to ask someone else to represent you if

5    you want me to do that, but you're not going to be able to fire

6    him.

7        If you do not like him, if you do not like the advice he's

8    giving you, then you can try it yourself, and that lawyer will

9    be what we call your standby counsel.  But that will be at

10   least someone you can have in the courtroom that you can ask

11   about the procedures.  Otherwise you're going to have to

12   cross-examine the witnesses of the government by yourself,

13   you're going to have to then decide whether to testify or not

14   without the help of a lawyer.  That generally is not a good

15   idea.  And you'll have to -- you're not going to have somebody

16   to make objections to testimony that might be good objections.

17       There is an old saying that a man who has himself for his

18   lawyer is a fool.  You would be foolish to go to trial without

19   a lawyer.  But you're down to whoever comes up next on

20   Mr. Joiner's list.  And if you don't like him, I'm not going to

21   appoint you another one.

22       Do you understand that?

23            THE DEFENDANT:  Yes, Your Honor.  But may I speak one

24   moment?

25            THE COURT:  Yes, sir.

1          THE DEFENDANT:  I haven't fired anyone.  I haven't got

2    rid of anyone.  Those lawyers just didn't want to work for me.

3    I didn't say that I disliked them, neither one of them.  They

4    just don't want to work for me.  They got rid of their own

5    self.  They got off the case on their own.  It wasn't my fault.

6          THE COURT:  All right.  Did they talk to you?

7          THE DEFENDANT:  Yes, sir, they talked to me.

8          THE COURT:  Mr. Joiner, do you know anything about

9    this circumstance?

10         MR. JOINER:  No, Your Honor.

11       No, I've never had --

12         THE COURT:  Mr. Rehfeldt first, and then Mr. Yarbrough

13   second.  They are two of the better lawyers in Jackson.  I

14   don't know what's wrong with you, but a lot of other people

15   like them and hire them.

16       Why did you -- why did they say that you had terminated

17   them?

18         THE DEFENDANT:  Your Honor, I have no idea.

19       I had not -- I mean I had no completely idea.  I mean

20   everything -- only thing I asked them to do, I wanted them to

21   file motions for me.  They didn't want to do that.

22       Every time I was like, well, Could you give me a better

23   situation?  They didn't want to do that for me.  It was a lot

24   of things they didn't want to do.  It wasn't because of me.  It

25   was a lot of things that they wanted, you know what I mean?

1    So I mean I couldn't do nothing about that.  It was the

2    things that they didn't want to do.

3    THE COURT:  All right.  Nijah, would you go and call

4    Mr. Yarbrough and Mr. Rehfeldt and tell them we've had this

5    come up and that I would like to discuss this with them in the

6    courtroom?

7    And if they can come over this morning, we have got some

8    other things to do, or if they can come this afternoon, we can

9    hold Mr. King here until we can clear this up.

10   And then, Mr. Joiner, are you going to be up here for a

11   while?

12   MR. JOINER:  Yes, sir.

13   THE COURT:  Okay.

14   MR. JOINER:  I'm dedicated to this business.

15   THE COURT:  Okay.  And we've got some more, so...  All

16   right.  So, Mr. King, I'll see if I can't get Mr. Yarbrough and

17   Mr. Rehfeldt so that I can talk with them.  I may have to talk

18   to them on the telephone.  But we'll see if we can get

19   something done, find out what they say about why you were

20   listed as having terminated.

21   THE DEFENDANT:  Yes, Your Honor.  Well, I mean do you

22   think they would actually go on my behalf?  I mean do you think

23   they would speak up on my behalf?  I mean they not going to --

24   if they didn't enlist themselves, I don't feel like they're

25   going to be willing to tell you, I mean, things that are going

1  to be irrelevant toward them.

2         THE COURT:  I understand what you're saying.  I don't

3  know what they're going to say, but I want to find out so that

4  I can find out what to do.

5      There is no need for me to appoint another lawyer if you're

6  not going to get along with any lawyer.

7      You don't have a right to select any lawyer that you want

8  because you can't pay a lawyer.

9      We have a panel of lawyers that are qualified to represent

10 people in criminal cases.  That doesn't mean that the defendant

11 has to like them.  You don't have much choice.  You're either

12 going to go to trial without a lawyer or you're going to go to

13 trial with a lawyer.  My job is to try to make the trial as

14 fair as possible.  I don't know whether you're guilty or not.

15 I don't even know what you're charged with.  So it doesn't make

16 any difference to me whether you go to trial, whether you plead

17 guilty, whether you have a lawyer or don't have a lawyer.

18     But I'm going to handle this case.  I'm going to get it off

19 of my docket and we're going -- we're talking about trying it

20 on June the 25th.

21     So if you'll step back with the marshals, they're going to

22 hold you until I can find out whether I can get Mr. Yarbrough

23 or Mr. Rehfeldt in here later this morning or maybe early this

24 afternoon.

25   (Respite.)

1            THE COURT:  All right.  Let me get Mr. King back in
2    here, please.

3        All right, Mr. King, the clerk tried to get both
4    Mr. Rehfeldt and Mr. Yarbrough on the phone and they are not
5    available right now.

6        She had brought me the motions that each one of them filed
7    to withdraw as counsel.

8        Mr. Rehfeldt said in his motion that he had met with you
9    three times since he had been appointed and has come to
10   recognize that there is a conflict between this attorney and
11   client, that's you, and that no amount of time can rehabilitate
12   the attorney-client relationship as there is a total breakdown
13   of the relationship as it is obvious that the client does not
14   and will not listen to anything this attorney says in regard to
15   the case or law.

16       There is a communication problem between the attorney and
17   the client that is only getting worse with each visit, and
18   there is a total refusal to even consider the legal opinion of
19   this attorney.

20       This attorney has only been on this case a few weeks and
21   discovery has not yet been received, so there would not be any
22   delay if the court would appoint new counsel, as a motion for
23   continuance will be filed regardless since the trial is set for
24   February.

25       That's what Mr. Rehfeldt said.  And said that you would not

1  work with him.

2      Mr. Rehfeldt, as I have said, is a very good attorney.  He

3  has always been straight up and told me the truth about things,

4  and I trust him.

5      Apparently you will not work with Mr. Rehfeldt.

6      Then there is a motion to withdraw that was filed by

7  Mr. Yarbrough.

8      The Office of Federal Public Defender on January 25th

9  of 2018 requested counsel to represent the defendant on the

10  charges set forth in the document.

11      Counsel has performed his duty as counsel since his

12  appointment up until the present time, which is the 11th day of

13  April of this year.

14      Counsel would show that in spite of his best legal efforts,

15  a difference of opinion and other conflicts have developed

16  between counsel and defendant, and based upon that he is unable

17  to properly represent the defendant.

18      Mr. Yarbrough has practiced before this court for a long

19  time, as well as Mr. Rehfeldt.  I have never had Mr. Yarbrough

20  tell me something that was not right, was not the truth.  He is

21  a good lawyer and he knows what he is doing.  He has

22  represented many, many defendants well.

23      Apparently, for whatever it is, you can't get along with

24  either of them.  And since you have had two of the best ones

25  appointed, I am going to simply set your case for trial on --

1  is that Monday, I guess?  -- June the 25th.

2         THE CLERK:  Yes.

3         THE COURT:  This year.  Here in this courtroom.  It

4  will begin at 9:00 o'clock on that Monday morning.

5      Now, what will happen is, is that the jury will be brought

6  in, the jury panel will be brought in, you will have a certain

7  number of challenges to the jury group.  They call it a panel.

8  I'll tell you that on the day.  That panel will be selected,

9  you'll have so many that you can reject.  You can pick -- you

10  can accept or reject any of them, up to your limit of

11  rejections.  The same is true of the government.  That jury

12  that results from that process will be the judge -- will be the

13  jury to which your case is presented.

14      The first thing after the jury is selected is that opening

15  statements will be made.  The government will make its opening

16  statement, the government's lawyer, you will make your opening

17  statement.  After that the government will present its proof,

18  we call it, its evidence to the jury.  They will call however

19  many witnesses they wish to call.

20      Then they will -- after each witness has been examined by

21  the government's lawyer, you will have a right to cross-examine

22  that witness.  You may ask him whatever questions are

23  allowable, and I will rule.  If the government makes an

24  objection to some question you ask, I will rule on that

25  question.  If the objection is well taken, I will sustain the

1  objection and you will not be able to ask that question.

2      I can't tell you what to ask.  I can't do anything but rule

3  as I would as if you had a lawyer representing you.

4      After the government has finished presenting its witnesses,

5  you will have a right to call your witnesses.  That would

6  include yourself.  You would have a right to ask -- to testify.

7  You would have a right not to testify.  You do not have to

8  testify.  If the government -- they can call you, but you don't

9  have to testify.  If you call yourself as a witness, they will

10  have a right to cross-examine you.

11      You may call any other witnesses that you wish.  If you

12  want to call witnesses, you're going to have to issue a

13  subpoena for them.  And I am going to ask Mr. Joiner if he or

14  somebody in his office can help you with that process and who

15  you might need to call as a witness.

16      After you call your witnesses and question them, then the

17  government can cross-examine those witnesses, and then after

18  that's all over, both sides will have a right to have closing

19  arguments to the jury.

20      The jury will then go back and deliberate.

21      And that's how the process will take place.

22      If you want witnesses, one witness or more, they will have

23  to be summonsed to be here.  Mr. Joiner can help you with that

24  process.  But that is the way the trial will go and, very

25  frankly, as I have told you, the old thing about the man who

1  has a lawyer for a client, has himself for his lawyer, a man

2  who has himself for his lawyer is a fool.  That goes back

3  forever.  And I would hope you would accept a lawyer, but I

4  can't make you do it.  And the way you have been here this

5  morning, I don't think you're in any mood or state of mind that

6  you will be happy with any lawyer.

7          THE DEFENDANT:  I don't understand why you say that,

8  Your Honor.

9          THE COURT:  What?

10          THE DEFENDANT:  I say, I don't understand why you say

11  I wouldn't be happy with anyone.

12          THE COURT:  Because you have gotten rid of two of the

13  best lawyers in Jackson that were appointed to represent you is

14  why.  You wouldn't listen to them.

15      I can't go into what you discussed with them or what they

16  discussed with you.  But Mr. Yarbrough I think said he had met

17  with you three times and you wouldn't talk to him, or wouldn't

18  talk -- or accept any advice that he's given you.

19      Now any lawyer -- wait a minute.  Let me -- because I don't

20  want to talk too much more than this.  Any lawyer is going to

21  go through the facts with you.  Any lawyer is going to then

22  assess the case and say, It looks to me like you got a good

23  chance of being convicted; or, that this case -- I can't

24  guarantee you anything -- but this case looks like you might

25  have a chance to win it.  Take your choice.

1    But if he tells you that you've got a good chance of losing

2  the case, then he would go to the Assistant United States

3  Attorney and try to make a deal with the U.S. Attorney for a

4  recommendation to sentence you at a lesser than the wide open,

5  and you can take your choice.

6    This is all the explanation I'm going to give to you.

7    But right now I will see you here in the courtroom, the

8  marshals will bring up here then, on June the 25th to start

9  that trial the way I have just explained it to you.

10    Do you have any questions?

11    THE DEFENDANT:  Your Honor, I'm not, I'm not ready for

12  no trial.

13    THE COURT:  You're going to be ready.  You've got one

14  month.

15    You've been sitting in jail for -- dealing with two lawyers

16  that have been offered with you since the first of the year.

17    THE DEFENDANT:  I mean Tony Yarbrough only came and

18  seen me three, three -- well, three times in four months.

19    Mr. Rehfeldt, we didn't have, we didn't have a motion of

20  discovery.  He was bringing me a plea without even seeing my

21  motion of discovery.  And I was just telling him about, let me

22  see my motion of discovery.  So he didn't want to be on the

23  case because of that.  Tony Yarbrough -- I mean Larry

24  Yarbrough, the only thing I asked him to do was can we have an

25  evidentiary hearing.  He didn't want to file any motions for

1  me.  I didn't have no problem -- I don't have no problem

2  listening to no counsel.  I mean, you know, I'm no lawyer

3  myself, I don't have a problem listening to a counsel.  It was

4  just they wanted to do what they wanted to do.

5          THE COURT:  I can't go into the details of what you

6  and your lawyer --

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  -- talked about, because that's

9  confidential information, and in all probability what they were

10  discussing with you was good advice to you and that you

11  wouldn't listen to them.

12      Now I might not say that if it were one lawyer that you

13  didn't get along with, but there are two of them that you

14  didn't get along with and wouldn't listen to, and couldn't work

15  with you.

16      So I'm just explaining to you now, I'll see you on June

17  the 25th.  If you're not ready -- you've had plenty of time to

18  get ready.  I've got to give you a speedy trial.  You've got a

19  whole month now to get ready, and you can do it.  Mr. Joiner

20  will be -- can give you advice about what you need to do and

21  that type of thing, and so he will be standby counsel for you.

22  But he's not appointed as your attorney.

23      You can ask him questions and that kind of thing.  But

24  that's, that's all I'm -- that's all I can say to you today.

25      Mr. McGlothin, does the government have anything to add to

 1  what the court has told the defendant?

 2          MR. WANSLEY:  Not at this time, Your Honor.  But I

 3  believe Mr. Joiner -- or I guess I do have one point, Your

 4  Honor, is that is the court, is the court also instructing that

 5  this defendant have what the court has previously described as

 6  a stand-alone lawyer to sit with him at trial?

 7          MR. JOINER:  Yes, Your Honor.  If I could address

 8  that.

 9      My office has a conflict, but I will immediately get

10  standby counsel.

11      I'd like for, in front of the court, to bring up -- the

12  prosecutors have informed me that regarding the discovery that

13  they've made available, they've sought and obtained a

14  protective order that prevents Mr. King from having copies of

15  his discovery within the Madison County Jail, which is

16  standard.  The standby counsel will meet with him as often as

17  necessary to allow him to view discovery and prepare his case,

18  but he's not going to file a motion for discovery, as he's been

19  asking for, because the court's already ordered the discovery

20  to be produced, and he's not going to get a copy of the

21  discovery from anybody that I call to assist him to keep inside

22  the jail, and I think that's part of the problem.  I would

23  guess that that's part of the problem he's had with his two

24  previous lawyers, so --

25          THE COURT:  Standby counsel is free to bring the

1  discovery to the Madison County Jail and meet in the

2  consultation room with him and let Mr. King see what has been

3  produced.

4           MR. JOINER:  Yes, sir.  Absolutely.

5           THE COURT:  All right.  Do you understand that,

6  Mr. King?

7           THE DEFENDANT:  I can't really say I can, Your Honor.

8           THE COURT:  You what?

9           THE DEFENDANT:  I can't really under -- I can't really

10  say I can understand you.  You know, I don't know nothing about

11  the law.

12           THE COURT:  Well, that's why you need a lawyer.

13      Anyway, Mr. Joiner is going to find a lawyer, a third

14  lawyer, who will be standby counsel.  That lawyer will not be

15  appointed for you.  He will simply be standby counsel to help

16  you.  You'll be representing yourself in court.

17           THE DEFENDANT:  But I don't know how to do that, Your

18  Honor.

19           THE COURT:  Huh?

20           THE DEFENDANT:  I don't know how to represent myself

21  in no courtroom.

22           THE COURT:  Well, you've already turned down your

23  chance to have a lawyer.

24           THE DEFENDANT:  They didn't want to represent me, Your

25  Honor.

1          THE COURT:  You want to argue with me, too?

2          THE DEFENDANT:  No, sir.  No, sir.

3          THE COURT:  All right.  Well, be quiet.

4     Whoever Mr. Joiner finds that will agree to be standby

5     counsel with you can answer legal questions for you.

6          If you -- he will be allowed to receive the discovery from

7     the U.S. Attorney's office and bring it to the Madison County

8     Jail and sit with you in the lawyer-client room down there and

9     go over that discovery with you.  But the discovery is

10    confidential and will not -- you will not be able to keep those

11    documents, or whatever else it might be, in the jail with you.

12    But that will be accessible to you.

13         Now if you have some other problem, we'll straighten this

14    out another way.  But that's the way it going to work for now,

15    and you're excused here at this time.

16         THE DEFENDANT:  Thank you, Your Honor.

17    (Proceedings concluded at 10:25 a.m.)

18

19

20

21

22

23

24

25

1        CERTIFICATE OF COURT REPORTER

2        I, Fred W. Jeske, RMR, CRR, Official Court Reporter for

3  the United States District Court for the Southern District of

4  Mississippi, appointed pursuant to the provisions of Title 28,

5  United States Code, Section 753, do hereby certify that the

6  foregoing is a correct transcript of the proceedings reported

7  by me using the stenotype reporting method in conjunction with

8  computer-aided transcription, and that same is a true and

9  correct transcript to the best of my ability and understanding.

10       I further certify that the transcript fees and format

11  comply with those prescribed by the Court and the Judicial

12  Conference of the United States.

13

14

15

16        S/*Fred W. Jeske*

17       FRED W. JESKE, RMR, CRR
         OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25